PHILIP BALTZELL,
SURVIVING PARTNER OF
THOMAS BALTZELL
vs.
ANN TRUMP, EXECUTRIX OF
WILLIAM B. TRUMP.

MARCH TERM, 1850.

[CONSTRUCTION OF PARTNERSHIP AGREEMENT.]

By one of the articles of a partnership agreement, a partner bound himself, "not to take out of the business, or stock in trade," of the partnership, "*more* than seven hundred dollars per annum, in goods or money, or both."
HELD—

That this article could not be construed as an agreement, that this partner should have a salary of seven hundred dollars, in consideration of his giving his attention to the business of the firm.

That by this article he was restricted from taking *more* than seven hundred dollars, but he might take *less*, and if he should take less, he would not be entitled to have the difference made up, upon the expiration of the partnership.

VOL 1—44

[By articles of agreement, executed on the seventh day of February, eighteen hundred and thirty-five, Philip and Thomas Baltzell, and William B. Trump, entered into copartnership, under the name and firm of William B. Trump & Co., to commence on the ninth of the same month and continue for the term of three years.

The third article provided, that all expenses relating to the business of the firm should be taken out of the joint funds, of which a regular account was to be kept, and each item charged, as it accrued, in the expense account.

The fourth article provided, that, after paying expenses, and deducting the capital of $14,000, one half of which was to be contributed by Trump, and the other by the Baltzells, the residue, if any, was to be equally divided, that is, Trump was to recieve one half and the Baltzells the other.

The fifth article is in the following words : " The said William B. Trump binds himself not to take out of the business or stock in trade of the said firm of William B. Trump & Co., more than seven hundred dollars per annum, in goods, or money, or both."

The amounts withdrawn at different times, and making the aggregate sum of $2100, were never entered on the expense account until the 1st February, 1838. On that day, shortly before the dissolution of the copartnership, of which dissolution the articles relevant to this case are recited by the Chancellor, in his opinion, an entry was made by the direction of Trump, by which he was credited, and the expense account charged with this whole sum. The bill in this case, which was to recover the said sum of $2100, was filed by Philip and Thomas Baltzell on the equity side of Baltimore County Court, on the 24th of June, 1841. Upon the death of the complainant, Thomas Baltzell, and of the defendant, William B. Trump, a bill of revivor was filed by the surviving partner against the executrix of the deceased defendant, and the case was subsequently removed to the Court of Chancery.

[The Chancellor, in his opinion, says :]

THE CHANCELLOR:

Although the answer in this case, which was filed by William B. Trump, in his lifetime, resists the complainant's title to the relief prayed by the bill, upon the ground that he, Trump, was to be allowed the sum of seven hundred dollars per annum for his services, out of the joint effects of the firm, as a part of the expense of conducting its business, I do not understand it to be strongly insisted that the articles of copartnership bear that interpretation; and it appears to me to be totally unwarranted by any one of the stipulations of that agreement, or of the whole taken together.

As there was to be no division of the profits during the continuance of the partnership, and as it may be fairly presumed from the proceedings that Trump would have been without means to defray his own personal expenses, unless some stipulation had been introduced to authorize him to take something out of the firm, the fifth article was inserted.

The theory of the answer is, that this article entitled Trump to take from the firm the sum of seven hundred dollars per annum, as a part of the expense of carrying on its operations— that it was the agreement of the parties, that in addition to his share of the profits, he should have a salary of seven hundred dollars, in consideration of his giving his undivided personal attention to the business of the firm.

If such was really the contract of the parties, it certainly seems strange that their meaning was not expressed in clearer terms; and still more extraordinary, that, if a fixed compensation had been · designed, the article should have declared he should not take *more* than the given sum.   Can it be reasonably contended, that if Mr. Trump, during the three years, had withdrawn *less* than seven hundred dollars per annum, he would have been entitled, upon the termination of the partnership, to have taken out a sum equal to the difference between the amount so withdrawn by him and the annual compensation which he now claims ?   The language of the contract is, that he shall not take *more* than seven hundred dollars, but surely he might take *less;* and there is nothing in any part

of the instrument which gives color to the idea, that if he should take less, the difference should be made up to him upon the expiration of the partnership.

It may also be observed, that the view here taken of this contract entirely conforms with what seems to have been the construction put upon it by Mr. Trump, until the entry was made in the books on the 1st of February, 1838, but eight days before the agreement dissolving the partnership was executed.

The agreement was, that every article properly chargeable to the expense account, should be charged as it accrued, and it is certainly fair to suppose, that if Mr. Trump had considered that the sums and goods taken out by him were to be placed to that account, he would have caused the proper entries to be made, from time to time, as was done with respect to the other expenses attending the prosecution of the business.

I do not deem it necessary to refer particularly to the parol evidence, and will simply observe, that I am satisfied from it, that when the agreement dissolving the partnership was made, the Baltzell's did not know of the entry of the 1st of February, 1838, and, therefore, they are not to be presumed to have sanctioned it, either by acquiescence, or by positive approbation.

I do not find in the stipulations of the agreement, by which this partnership was dissolved, anything which, by reasonable construction, can absolve the estate of Trump from the payment of the sum claimed by this bill.

In consideration of the sum of $15,550, stipulated to be paid by the Messrs. Baltzell to Trump, and which it is conceded has been paid, and that they should assume to pay all claims against the firm, and there is no pretence that they have not faithfully performed this stipulation; Trump agreed, on his part, and did, by the terms of said agreement, "assign, transfer and deliver to them, all his right to and interest in all accounts, notes, bonds, mortgages, and judgments, or claims in any other form whatever, belonging to or due the firm of William B. Trump & Co., be the same more or less."

There are other provisions transferring to the Baltzells the stock of goods on hand, and the cash, be the same more or less.

And then there is a provision, that the Baltzells take the debts due the firm at their own risk—that Trump should give them a bond with security, that he had contracted no other debts or liabilities against, or in the name of the firm, other than those enumerated in a schedule taken from the books, and also against any other liabilities created by him individually; and the Baltzells were, in like manner, to give bond to Trump for the performance of their engagement to pay the debts of the firm, and then follows this stipulation :

"The above conditions being fulfilled, William B. Trump, Thomas Baltzell and Philip Baltzell, mutually renounce all claims against each other, any loss or gain, or any accounts or claim, assigned to either party, to be the loss or gain of said party, as the case may be."

Whatever may be the true construction of the articles of copartnership, this provision, it is contended, must protect the defendant from the claim now made upon him for the sum of two thousand one hundred dollars, for which he was indebted to the firm, and stood indebted upon its books, until the entry of the 1st of February, 1838, was made.

We must assume, of course, that entry was an improper one, and that Mr. Trump actually owed the firm the sum of money in question, precisely as any other person would, who stood fairly charged upon its books with money and goods to that amount, and then the question is, whether, in the stipulation quoted, there is anything which will release him from such a claim.

I cannot bring myself to think so—the parties by the agreement dissolving the partnership, had entered into various reciprocal stipulations. Those on the part of Trump were, that he should transfer and assign to the Baltzells all claims due to, and merchandise and cash, the property of the firm, and the latter agreed, on their part, to pay all claims against the firm, to incur the risk of the insolvency of those who might be debtors to it, and to pay to Trump a specific sum of money for his interest. Stipulations which they have faithfully performed. Trump's engagement was, that he would assign and

44*

transfer to the Baltzells all claims due to the firm, and all merchandise and cash on hand; and upon his doing so, they agreed to renounce any claim against him which his failure to perform his contract would have given rise to. But the complaint they now make is, that he did not perform his contract—that there existed upon the books of the firm an account against himself for a large sum of money, which, by the express terms of the contract dissolving the partnership, was to have been assigned to the Baltzells. But that instead of doing this, he, Trump, without their knowledge, and without any authority to be found in the articles of copartnership, extinguished this claim by an arbitrary entry in the books. Assuming this to be the case, (and it appears to me to be impossible to contend that the contract which gave rise to the partnership justified the entry,) and then it follows that Trump did not fulfill his engagement to assign over to the Baltzells all claims due to the firm; and, therefore, there is no pretence for saying that he may shelter himself under the stipulation by which the parties reciprocally renounced demands against each other, since that renunciation was only to take effect upon the performance by each of all the terms of the contract on his part. If this account against Mr. Trump on the books of the firm was a claim due it, it passed to the Messrs. Baltzells by the express terms of the contract; and an entry in the books made by the former, wholly unauthorized by the articles of copartnership, cannot extinguish or impair their rights, nor can they be impaired by the contract of dissolution, of which that very entry was a violation on the part of Trump.

My opinion, therefore, is, that the complainant is entitled to the relief sought by his bill; and as the sum claimed is specific, and an agreement has been filed admitting assets, there can be no necessity for sending the case to the auditor for an account.

The bill claims the sum of $2100, with interest from the date of the dissolution of the partnership, on the 9th of February, 1838, but I think I shall be doing justice by giving interest from the day the bill was filed, on the 24th of June, 1841, and shall so decree.